This morning is agenda number three, case number 106243 and 106273, Consolidated, People of the State of Illinois v. Raymond Brown. Good morning, counsel. You may proceed when you're ready. Thank you. Good morning, your honors. Good morning, counsel. My name is Yasi Navai and I represent the petitioner, Raymond Brown, on behalf of both Consolidated Appeals. May it please the court. In a case with a mentally ill pro se petitioner, the state advances two extreme and untenable positions with regards to the definition of a frivolous pleading. With respect to the Post-Conviction Hearing Act, the state completes the first stage frivolousness inquiry, the first stage just inquiry, with the third stage inquiry where a petitioner is provided counsel and has the benefit of an evidentiary hearing. This, of course, is against the well-reasoned decisions of this court and against the plain language of the statute itself, the Post-Conviction Hearing Act. Additionally, the state leaps to the conclusion that every time a pro se petitioner is unsuccessful in his claims, in his petition, then fines should be assessed. Again, this is against the plain language of the statute itself. But, Your Honors, it also dissuades clients like Mr. Brown, in this case, from bringing forward those claims which could not otherwise be brought on direct appeal. This is particularly so in Mr. Brown's case, where in filing this, his first and only pro se petition, he was responding to the appellate court's directive and allowing his appellate counsel to withdraw on direct appeal. As I indicated, this court has time and time again reiterated the standard at the first stage and as well with respect to the ineffective assistance claims. As this court noted, both the majority and the concurrence in Edwards, at the first stage, we don't require pro se litigants to plead a full, a complete factual claim. And that's not without good reason. The reason being that a pro se petitioner is not required to cite to legal authority. And towards that end, a pro se petitioner may not be aware that certain facts, which he thinks are tangential and are not related, are in fact at the heart of his claim. But, Your Honors, even if this court were to apply a stricter standard in this case, Mr. Brown's pro se petition more than satisfies that. I direct this court to the pleading itself. In his pro se petition, Mr. Brown indicates that he told his trial counsel that both prior to the time of trial and at the time of his arrest, he was taking various psychotropic medications used in the treatment of bipolar disorder. He also indicates a second fact, which is quite significant because it goes to the heart of pleading prejudice. He claims that he was so lethargic as a result of these medications that he, in fact, did not understand his proceedings that well and was slow to react. In addition to that, Your Honors, Mr. Brown provides ample medical documentation. One in the form of several documents indicating that in the year prior to his actions and his arrest in this case, he was treated by various psychiatrists, in fact, and suffered situations such as impaired judgment, hallucinations, acute psychosis, and confusion. And that he was hospitalized for these symptoms, and further, that he was treated with psychotropic medications for these conditions. In addition to that, he provides medical prescription forms from 2003, which demonstrate that at the time of trial proceedings and at the time of sentencing, Mr. Brown was prescribed various psychotropic medications, including Seroquel, Sinoquan, Trazodone, Doxepin, Listerine, and other psychotropic medications. And the list goes on and on. Then, and this is quite important, he provides affidavits from two affiants, which refute trial counsel's representations to the trial court at sentencing. These affiants, the mother and the aunt of Mr. Brown, indicate that they informed Mr. Brown's counsel well in advance of sentencing, that Mr. Brown indeed attempted suicide on numerous occasions, that he was taking psychotropic medications for bipolar disorder, thus disputing trial counsel's representations to the sentencing court that he had no knowledge of Mr. Brown's condition. Then, your honors, we have the crime itself, an attempted suicide by caught mission. When all of these factors are taken into consideration, they present a properly pled first stage post-conviction petition. The state, interestingly, does not dispute any of the foregoing. The state's complaint comes in twofold. One, the state complains that his claims, that Mr. Brown's claims are positively rebutted by the record. And two, that the pleadings are insufficient. I'll begin first with the sentencing statements. Indeed, the state claims that Mr. Brown's claims are rebutted by the record, relying largely, if not wholly, on a sentencing statement made by Mr. Brown. Because, of course, there is no trial testimony by Mr. Brown, and the colloquies at trial are, in fact, quite limited. However, the state's very notion that we can dispense with Mr. Brown's pro se post-conviction petition, the claims in the petition, by looking, which relate to trial behavior, by looking solely at sentencing behavior, is at odds with the notion that this court has recognized, and which the United States Supreme Court has recognized, that the trial courts must be vigilant to a client's bona fide doubt of fitness, because it is unconstitutional to try a man who is unfit. But also, the state's argument ignores that the sentencing conduct, in this case, the sentencing hearing, in fact, happened a month after trial, over a month after trial. And if we look at the prescription forms which are appended to the pro se petition, it indicates that Mr. Brown's medication list and medication dosage varied significantly from the trial proceedings to the time of sentencing. Thus, it would be particularly inapt to find that Mr. Brown's claims are positively rebutted by the record. And again, I point to that fact, positively rebutted by the record. That's the standard that the state must meet. What about the dialogue that the defendant had with the trial court? Thank you, Your Honor. I was actually getting to that point. The characterization of that statement is, in fact, inaccurate, far from showing that he was coherent. It shows that Mr. Brown had a basic misunderstanding of core rights. He goes on and on in the statement about why his trial counsel never brought up the fact that he wanted to commit suicide, that this was only an attempt on his part to commit suicide. He also goes on to say there were statements that he made to hospital personnel or police personnel that didn't come up, and he seems confused by the fact that, in fact, he waived his right to testify. So this is, in this regard, the case is quite similar to people v. Shorrock. But then we go on to other things. He's confused about the sentencing range. He says that the sentencing range was 1 to 20, when, in fact, it was 20 to 80. He talks about grand jury statements. He's all over the place. He's talking about plea offers. At one point, the trial court interrupts. It's enough. And I point to one last statement, which he makes in the statement. He says on the last court date, which would be the trial date, he says, I quote, I felt like I wanted to die. These are not statements of a person who we can say positively is coherent. And I think the other point that needs to be made here is that the state's view of mental illness is quite limited. In other words, as long as he can put a sentence together, he's fit. But that view has been rejected by the United States Supreme Court in Pate v. Robertson, by the Seventh Circuit in Browns v. Stearns. The limited conclusions that we can draw from the trial court are simply not enough to dispense with a claim regarding competency. And that's particularly true here. But again, I said the state's arguments wholly ignore the affidavits in this case. These affidavits are critical because what they do is they create a factual dispute here between the trial counsel who indicated to the court, I have no knowledge of this, and these affiants who are now saying, yes, in fact, he did know. And it is for this reason that we just can't dismiss a post-conviction petition like this at this stage. But I alluded to the second argument that the state makes, and that's regarding the pleadings themselves. The state's position has taken the position that because Brown's post-state petition doesn't specifically say that I informed my counsel that I was hallucinating, that therefore he can't satisfy an ineffective assistance claim. And that's simply inaccurate. In other words, according to the state, unless this mentally ill client tells his trial attorney I'm unfit, then trial counsel is absolved of the duty to investigate his competency. And that's simply not the case. I refer to this court back to all the information that the trial counsel allegedly had regarding prescription medication, regarding a history of mental illness, regarding attempted suicide attempts, regarding the crime itself. And this in and of itself required a duty on behalf of trial counsel to investigate. Also, another point that should be made is that the trial counsel here, his representation to the court that I had no knowledge of it, essentially supports Mr. Brown's claim that his trial counsel did no investigation of his competency. And that's quite important. In conclusion, with regards to this claim, I think it's abundantly clear that Mr. Brown's post-state petition, under any standard this court applies, has met the threshold pleading standard required of a post-state petitioner. Therefore, we ask that the court reverse the appellate court's decision. Therefore, I'd like to just briefly touch upon the argument raised by the state regarding the second claim. That every time a post-state petition fails to state a claim, then it should be sanctioned under the fines provision of Section 22-105. However, if this court reads the statute as the state instructs, then the language patently without merit of the state should not be used. That would be superfluous. And to explain that, I direct this court's attention back to Section 122-4 of the Post-Conviction Hearing Act, which cross-references Section 22-105. And it cross-references it with respect to those petitions which are found frivolous. And that's significant, because the Post-Conviction Hearing Act allows summary dismissal for petitions that are frivolous or patently without merit. And I direct this court's attention, so if we were to read it the way the state is instructing, then the patently without merit language would be rendered completely superfluous. And I think this also brings up another point. The disjunctive or in this case is quite significant, because it connotes a separation. That there are petitions which are frivolous, and there are petitions which are patently without merit. And this court's decisions in People v. Beauclair and People v. Blair only further that notion. In those cases, this court defined the terms, the phrases frivolous separately from patently without merit. Frivolous was defined as without legal significance or lacking an arguable basis similar to 22-105B, which is lacking an arguable basis in law and fact. And patently without merit post-conviction petition was defined as one with plain, which was not a legal basis. It was plainly, obviously, and clearly without legal significance. But even if this court were to assume that the plain language of the statute is not clear and look to the legislated history, it only furthers Mr. Brown's position. If we look to Section 122-2.1, which allowed for, did away with the summary dismissals, allowing, or created the summary dismissal, I'm sorry. Did away with automatic appointment of counsel. As Justice Fitzgerald noted in his concurrence, that portion of the statute is patterned after 28 U.S.C. 1915, the federal law. And in this regard, it's important to look at Nitschke v. Williams and Denton v. Hernandez. Both of these decisions interpreted that federal statute. And what they noted is that a petition which fails to state a claim is not necessarily frivolous under 1915, which allowed for the filing of informal papyrus petitions under the federal statute. So there's a difference between a claim which fails to state a claim and one which is frivolous. But if you look to Section 22-105, the fines provision, if you look to the legislative history of that, that only furthers our notion that what the legislatures wanted to do was not find a petitioner like Mr. Brown, who's only bringing a claim regarding his competency. What they intended to do, if we look at the legislative history, is find those individuals who are bringing petitions regarding Skippy Peanut Butter or other petitions. Or plainly or clearly, obviously, without legal significance, those claims. Not someone like Mr. Brown, who's bringing a potentially meritorious post-conviction petition. In conclusion, Your Honors, as I said before, this Court need not even address this issue at all. Because Mr. Brown's petition is both non-frivolous and meritorious. And therefore, the appellate court erred in refusing to remand for second-stage proceedings. But alternatively, even if the Court concludes otherwise, I'm sorry, even if the Court concludes otherwise, then this should nevertheless affirm the reversal of the fines order. Thank you very much. If there are no further questions, thank you. Good morning, Your Honors, Counsel. May it please the Court. I will first address the appellate court's vacature of the... Oh, I'm sorry. I'm Cook County Assistant State's Attorney Mary Needham, and I represent the people of the State of Illinois. I'm going to first address the appellate court's vacature of the trial court's assessment of filing and mailing costs. When the legislature enacted Section 22105 of the Code of Civil Procedure, it intended two things. The first was to recover a fraction of the money that it takes to address and resolve frivolous pleadings filed by prisoners. And the second was to potentially curb the number of these frivolous pleadings that are filed and that impede, that clog the system and adversely affect the court system. The defendant's postconviction petition was exactly the type of pleading the legislature had in mind when it enacted this provision of the Code. In fact, that the legislature intended that this provision apply to postconviction petitions is evident because it specifically lists postconviction petitions as one of the pleadings to which the assessment of costs would apply. The trial court found the petition to be frivolous and patently without merit. The appellate court also found that the petition was frivolous and patently without merit. But then the appellate court mistakenly determined that there was a difference in the definition of frivolous under the Postconviction Hearing Act, which the defendant brought, and frivolous under the Code of Civil Procedure. This was an error. The definition of frivolous between these two statutes is the same and completely compatible. Ms. Needham? Yes. Let me ask you a question. If this court disagrees with the state on whether the petition was frivolous and patently without merit, the first issue, then are you still requesting, which would necessarily, I would think, be in a firm on the second issue, basically, if we find that it's not frivolous, there's no reason to assess costs? That's correct. Are you asking us, even in that instance, to address what I think you're going to get into now, and that is whether the petition was frivolous and patently without merit? Is it that 22-105 and 122-2.182 go hand in hand? What I'm saying is I think part of your argument is that there was a finding that the petition was frivolous and patently without merit, and yet a finding on the fees and costs that that would not apply, right? That's correct. If we hold differently on the first issue, if we hold that the petition is not frivolous, well, necessarily no cost should be assessed. That's correct. But what I think you're getting into now and started was that the rationale of a court that finds a petition frivolous and patently without merit necessarily should impose costs under 22-105. Yes. That's our position. So are you asking us to address that whole issue even if we reverse on the first issue? Yes. Because I think that there should be direction and it should be clear that the statute, 22-105 of the Court of Civil Procedure, it specifically states when there is a finding of frivolousness, then the petition, then the prisoner is responsible for the costs. It's not a fine, it's the costs. And it's only really a fraction of the costs in this case where he was, the filing and mailing costs were assessed. And it is, it would be your position along that line that if we would so rule that then the trial court has no discretion. If they find it frivolous, they must impose the costs? That is how the statute should be read because it specifically states that that person is responsible for the costs. When they find it frivolous, they must impose the costs. When there is a finding of frivolousness, as there was in this case, and as there usually is or must be in a first stage post-conviction petition, there is a finding that a petition is frivolous or patently without merit. And it is our position that the definition of patently without merit falls well within the statute section of the Court of Civil Procedure where it states specifically what, how the person is responsible for the costs. And how the pleading should be, how it can be determined whether it's frivolous or patently without merit. Now in this case, the trial court found it was both and the appellate court found it was both. So an argument that there's a distinction doesn't really apply. And it is our position that there is no real meaningful distinction between a petition that is frivolous and a petition that's patently without merit. Because this court has found a petition that is frivolous to have little weight or importance, having no basis in law or fact, and that falls well within the Code of Civil Procedure. And a petition that is patently without merit is clearly, obviously, plainly without any legal significance, without standing or importance. And that also falls under the definition of the Code of Civil Procedure. All the rules of statutory construction that apply, and that would be to give effect to the meaning of the legislature, to attribute the words of plain and ordinary meaning, to construe the same word in different parts of the statute similarly, and to construe separate statutes that deal with the same subject, to give them harmonious effect, all support a conclusion that a post-conviction petition that is dismissed at the first stage of court proceedings is not a statutory construction. And that's why the post-conviction petition proceedings is subject to these assessment of costs. Now, there's no quarrel or confusion about defendant's low burden on a post-conviction petition. We're not asking or advancing that this court apply anything other than the burden that is well-established in law. Defendant has to meet a very low threshold of the law. And that's why we're asking the defendant to proceed on his post-conviction petition. Excuse me, doesn't the, didn't the appellate court, though, seem to apply a different standard? Isn't that what the defendant is arguing? Well, defendant almost had to prove, or as the appellate court established, the trial court would have to find a bona fide doubt of fitness. Well, defendant has argued that the appellate court applied the incorrect standard and held defendant to a higher burden because it referenced a case where there was a second stage dismissal. But at the outset of the appellate court's decision, it plainly stated that it was considering whether defendant had met his burden of establishing a gist of a meritorious claim of a constitutional violation. It's our position that the appellate court did apply the correct standard. But even if it didn't, the standard of review here is de novo, and this court will apply the correct standard to defendant's petition. But defendant cannot meet that low burden because he must do more than put pen to paper and write, my counsel was ineffective. I was taking medication. He has to make some allegations that are not rebutted by the record that suggest a violation of his constitutional rights. That's what's missing in this case. Was there something tendered that showed he was taking medication at the time of the trial? His post-conviction petition attached prescription forms for psychotropic medicine. For him? Correct. And that was not enough to create a gist of a... No, because the ingestion of psychiatric medicine is not enough to raise a bona fide doubt of his unfitness for trial. Wouldn't that be an ultimate decision, though? I mean, you're correct. In fitness, it's whether or not there's a bona fide doubt. Would that standard have to be met for the first stage to proceed? Well, I think defendant has to raise, he has to do more than say I was taking psychiatric medicine to raise a doubt, because it's not some doubt whether there's some doubt. Did he say in that pro se pleadings that he had prior hospitalization for psychiatric problems? Yes. He attached the mental health records from several years prior. And if you were, would you expect a trial judge at that point to at least order an examination, a psychiatric examination to determine whether there was anything to the allegations? At a post-conviction proceeding or at the trial? No, just on a day in court where the defendant comes up and it's shown persuasively that he's taking psychotropic medicine and that he's been treated for mental health problems. He's been treated for mental illness in the past. Wouldn't that be the point, without thinking of PCs now, but wouldn't that be the point at which the trial judge would say that's enough to give me a bona fide doubt as to his fitness? We'll send him over to the psychiatric institute for an examination now? Well, my answer has two points. Or should the judge say, no, that's not enough, we're not going to order an examination? Well, if defendant raises a history of mental health issues at trial and that he's taken psychotropic medicine, the trial court would inquire whether defendant was experiencing anything that would make him unfit for trial, because the question I'm sorry, I don't mean to interrupt you, but wouldn't that be the kind of question that would be asked at the second stage of the fitness trial? Well, what happened in this case was once it was brought up, the trial court did conduct a brief inquiry and he asked defendant's attorney, what's going on with your client? Have you noticed anything? And he said, no, he's communicated with me, he's been coherent, I haven't noticed anything about his conduct. It was raised at the trial level? Yes, it was. It was raised after when defendant, well, he was unhappy that he was found guilty and he raised it after trial and before sentencing. He said, you know, I was, and the thing about defendant's claim about his psychotropic medicine, it's unclear whether he's stating now, I was unfit because I have these medical conditions or I was unfit because I was taking this medication. In this petition, he said, I was unfit because I was taking this medication. I didn't understand what was going on. Right after trial, before sentencing, he said, judge, I'm unhappy with what happened at the last court date. I'm not happy I was found guilty. I'm not happy that my attorney didn't bring out more to show I wasn't really trying to kill the police officer. I'm not happy that my attorney didn't bring out that, you know, I was really trying to kill myself. And then he said, you know, I'm taking psychiatric medicine and I heard that I should have a psych evaluation for that and I might not even have had to go to trial. His claim regarding the psychiatric medicine had nothing to do with not understanding the proceedings and had nothing to do with his unhappiness with his counsel. His unhappiness with his counsel related to what he deemed his counsel's inadequacy was at trial and not eliciting that testimony. So the trial court did not ignore a claim that there was psychiatric medicine somehow impeded defendant's ability to understand. And when we're looking at defendant's claim that he was denied an effective assistance of counsel because his counsel didn't raise this doubt of his fitness, there's two presumptions that apply. And there's a strong presumption that counsel rendered reasonable assistance. And there's a second presumption that defendant is fit. And by fitness, we don't mean that defendant doesn't have a history of mental health issues or the defendant is taking medication. By fitness, we're speaking of does he understand what's going on in these proceedings? Can he assist in his defense? As I said, he first complained after trial about his attorney, but it didn't... But isn't that the reason you have the examination? To determine whether he can? Yeah, to determine whether there's any scientific evidence that he is having trouble understanding what's going on. Well, at the time when he first raised this, he didn't say he didn't understand what was going on. And when he mentioned psychiatric medicine, the trial court inquired. The trial court elicited some statements from his attorney saying, I don't notice anything. And the trial court also said, I haven't noticed anything that says he is. I understand that. Of course, if in fact he is mentally deficient, how could we expect him to say that? Well, he did say a lot from which we can look at and determine that he knew what was occurring at trial. Because it begs the question, how could he be recalling what his attorney did at trial and thinking that his attorney didn't do enough to bring out... He actually also mentioned that he thought a lot of... In an earlier pre-sentence hearing, did the trial judge make a finding that there was no need at that time to send him to the psychiatric institute? That's correct. Isn't the issue at that point whether there's a bona fide doubt before you order the psychiatric or the hearing? That's correct. Not some doubt. Did the judge make a statement of a bona fide doubt or was his record silent? I believe that the trial judge found that there was not a bona fide doubt of his fitness and then it moved into the sentencing. Defendant's statement at trial was, you know, far from rambling. He went on, and this is another reason why his claim that he was there was a bona fide doubt of his fitness because of the medication he was taking. At sentencing, he repeatedly stated how his medicine had helped him, how he knew he had to take it for the rest of his life. He was a changed person since he had been in prison. It had been a good experience for him. He went on and on about how improved his condition was since he was taking his medication. The issue is not... Was the defendant unable to establish that the trial court would have found a bona fide doubt of his fitness and ordered a fitness hearing and it had been apprised of the evidence offered in his post-conviction petition? Is that different than the gist standard? Is the appellate court indicating that the defendant would not prevail on the claim, and that's why it's being summarily dismissed, rather than whether it's stated the gist of a claim? Or is the appellate court inarticulately indicating that the fact this was already been looked at by the trial court and the claim can never prevail, and that's why there isn't the gist of a meritorious claim? Well, when you read that quote to me, and I don't have it in front of me, it does sound like maybe there is a misstatement about what burden they're referring to, but when you read the opinion or the decision in context and you see the whole analysis, I do believe that the appellate court was stating that defendant had failed to raise the gist of a meritorious claim. Because we're doing more than looking at the petition, we're looking at the record. Claims that are positive... So I guess in the light most favorable to you, those words are the appellate court saying the defendant will never prevail on this claim because it's already been considered and rejected in looking at the record? Yes. Do I understand your question? If I understand your question correctly, I believe they're saying this petition, he cannot state the claim, he does not state a meritorious, that's why they're affirming the trial court's dismissal, because he doesn't state the gist of a meritorious claim of a constitutional violation, and that is that his counsel was ineffective for not bringing forth this issue regarding his fitness. Okay. So you're saying that they're saying he can't state a gist because it's already been rejected by the, this claim has already been rejected by the trial court, so it's impossible to state the gist of the claim. Is that what you think they're saying? It sounds like that's what they're saying. That doesn't really answer your question. I think the appellate court is saying that the petition fails to state a claim. I don't know that they're saying he can never state a claim because for this, this reason, the trial judge who denied the petition was the trial judge in this case, too. He heard the case and he heard the facts of this case. Well, for the reasons stated in our brief and stated here today, the people respectfully request that this court affirm the appellate court's dismissal of the post-conviction petition and vacate the appellate court's order that states that the petition fails to state a claim. And that it vacated the assessment of filing and mailing costs. Thank you. Very briefly, Your Honors, I think I need to clarify. Go right ahead. The appellate court does say the trial judge found that defendant's receipt of psychotropic medications was not enough, standing alone, to raise a bona fide doubt of defendant's fitness. And went on and says the judge did not observe anything about defendant's conduct or appearance that would raise a bona fide doubt of fitness. That was at the time of the sentencing hearing. So I take it the trial judge did look at it at that time. Actually, Your Honor, our position is that the trial court did not. What happened at sentencing, there was no, first of all, there was no discussion about Mr. Braun's fitness at any pre-trial stage, nor at trial. At sentencing, briefly, when Mr. Braun complained, the court asked, and the only thing that was mentioned at the sentencing hearing was the use of psychotropic medications. The allegations contained in the post-conviction petition are outside of the record. These, in fact, that's exactly why the appellate court did not address this issue below, because Mr. Braun tried to bring up the issue when the court was ruling on the Anders motion. None of this information regarding the hospitalizations, regarding the two affidavits which we have now which refute the allegations made by trial counsel to the trial court, it was a perfunctory inquiry. Did you know about your client's condition? No, that was it. And the trial court said, well, based on my observations, there's nothing else to be discussed, and they moved on to sentencing. And in that regard, I think Peyton v. Robinson is very important. That United States Supreme Court decision says that we cannot just use those limited colloquies that occur at the trial and sentencing to dispense with a mentally ill client's claim regarding competency when there's other allegations in the record. There are numerous allegations in this record regarding to hospitalizations, and not in the case of Peyton v. Robinson. There are several allegations in this record that occurred in many years before this, but less than a year before this incident occurred. Those all have bearing on Mr. Braun's competency. It is not a claim that Mr. Braun is making specific to psychotropic medications only. There are a number of allegations, including the two affiants who dispute the allegations made by trial counsel that I have no knowledge of this. And in the case of the Brown Circuit decision, the same type of allegations were made by trial counsels there and were proved to be false after further inquiry into those cases. Those are all very important. Also, I would like to point out that the appellate court here said that race judicata does not apply, because this court has never addressed this claim regarding ineffective assistance of counsel for failing to investigate his competency. Neither at the trial level, nor on direct appeal. This issue is for the first time before this court, and the only way it could be before the court, based on all of the medical documentation and affidavits which he now provides. Must an attorney, a defense attorney, investigate a client's competency in every circumstance? I don't presume to say in every circumstance, but in this circumstance, where the trial counsel is aware, according to the pro se petition, of a history of bipolar disorder, depression, psychotropic medications, he is aware that this client has attempted suicide before, and in fact, the nature of the crime itself is a suicide by cop mission. He is aware of all of these facts, and when we look at that collective body, yes, there is a duty upon trial counsel to investigate his client's competency. Also, this court asked a lot about the appellate court's holding in this case. It is in which we find, quote, we find defendant is unable to establish the trial court would have found a bona fide doubt of fitness and ordered a fitness hearing had it been applied at the appellate court. This is the kind of evidence offered in his post conviction petition, relying specifically on this court's decision in People v. Harris, a second stage post conviction petition, or a case involving a second stage post conviction petition. It is Mr. Brown's position, therefore, that this court applied a much stricter standard. While down the road, at the second stage, at the third stage, he'll have to formulate, develop a more factually complete version of the evidence. Complete claim, and then have the benefit of an evidentiary hearing, where we'll have people come out and testify about his fitness, his doctors and such. At that point, he will have to establish further about the bona fide doubt of his fitness. Not at this stage, we're just making a threshold inquiry on the pleadings itself. And I think that this evidence from the appellate court's decision and their reliance on People v. Harris shows that there is a duty upon trial counsel that the court did apply a stricter standard. It doesn't absolve the appellate court because they relied on Edwards. They cited in the beginning of its opinion, they cited Edwards. The problem here is that in ultimately dispensing with the claim, they required the defendant to prove that he was unfit at the first stage. That's simply untenable, both with U.S. Supreme Court decisions, this court's decisions, and in the case of People v. Harris. And the Seventh Circuit decisions. Again, this is not a claim just made on psychotropic medication alone. There's a body of evidence indicating lack of competency. Very briefly, I'd just like to answer the claims regarding the second fitness claim, the frivolousness fines. The state's position ignores the fact that there are petitions which are frivolous. And those which are patently without merit. That's what we're saying, that there's a distinction. While the state and the defense and Mr. Brown agree very narrowly that subsection B1 of the fines provision is consistent with a frivolous post-conviction petition. That does not mean that every petition which fails to state the gist of a claim is ergo frivolous. And I think this is a great example. Could you indicate what would make such a distinction in this case? What one fact would result with these two apparent similar findings? Correct. I think that if we look at a petition, for example, that makes a naked allegation, this is not one of those kinds. They make a naked allegation regarding fitness or any other claim regarding, let's say, an alibi witness. My trial counsel failed to investigate alibi witnesses, but that doesn't include any affidavits to support that claim. On its face, the claim, you know, failure to investigate a fitness competency or a failure to investigate someone's alibi witnesses who could have supported a defense is not frivolous on its face. But yet it's patently without merit because it's unsupported. Another example of that would be a claim which is brought under the wrong vehicle. So a claim which is not frivolous if it had been brought under 214.01, let's say, but inappropriately was brought under the Post-Conviction Hearing Act. That's not frivolous. It may be patently without merit under the Post-Conviction Hearing Act, but it's not frivolous because it could be supported if it were brought under the 214.01. With that, I guess if there's no other questions, I would simply ask that this Court reverse the appellate court's order or decision and remand for second stage proceedings. And you need not address this second issue as an advisory opinion or otherwise. Thank you. Thank you both. Thank you.